Jalaal PEOPLES, 95B2699; Taiwan Lowmack, 12B0866; Richard Lawrence, 04B350; Zay McKenzie, 01A0506; and all others in the same situation, Plaintiffs,

v.

Brian FISHER, Commissioner of NYS DOCCS; Cheryl Morris, Director of Family and Ministerial Services; Paul Chappius, Superintendent at Elmira C.F.; John Mizgala, Dep. Supt. of Program Services at Elmira C.F.; and Sayed Afify, Islamic Chaplain at Elmira C.F.; Defendants.

No. 13–CV–6113 EAW.

United States District Court, W.D. New York.

Signed March 31, 2014.

Jalaal Peoples, Elmira, NY, pro se.

Taiwan Lowmack, Elmira, NY, pro se.

Richard Lawrence, Elmira, NY, pro se.

Zay McKenzie, Elmira, NY, pro se.

Hillel David Deutsch, NYS Attorney General's Office, Rochester, NY, for Defendants.

## DECISION & ORDER

ELIZABETH A. WOLFORD, District Judge.

*Pro se* Plaintiffs representing Shi'ite Muslim state prisoners at the Elmira Correctional Facility bring this action against Defendants pursuant to 42 U.S.C. § 1983 alleging discrimination based on religion. Presently before the Court is Defendants' motion to vacate the Clerk's Entry of Default filed November 15, 2013. (Dkt. 15). For the reasons set forth below, Defendants' motion to vacate the Clerk's Entry of Default is granted.

## *BACKGROUND*

Plaintiffs filed their complaint on February 27, 2013. (Dkt. 1). The acknowledgement of service was signed on May 16, 2013, by Debra A. Martin, the Assistant Attorney General in Charge, and on May 24, 2013, the Court ordered that Defendants respond to the complaint by July 16, 2013. (Dkt. 4). On October 24, 2013, over three months after the deadline to answer, Defendants submitted a letter to the Court requesting an eight-week extension to December 24, 2013, to submit a settlement offer or responsive pleading. (Dkt. 10). The Court denied the request and informed Defendants that any request for an extension must be made by a formal motion. (Dkt. 12). The Court ordered the Clerk of Court to enter default against Defendants, and default was entered on November 15, 2013. (Dkt. 13 & 14). That same day, Defendants moved to vacate the Clerk's Entry of Default. (Dkt. 15). Plaintiffs submitted papers in opposition on January 14, 2014. (Dkt. 17). Defendants filed an answer, which was over eight months late, on March 26, 2014. (Dkt. 21).

## *STANDARD*

The court may set aside an entry of default for good cause shown. Fed.R.Civ.P. 55(c). While vacating entry of default is in the discretion of the district court, there is a " 'preference for resolving disputes on the merits.' " *Powerserve Int'l, Inc. v. Lavi,* 239 F.3d 508, 514 (2d Cir.2001) (quoting *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 96 (2d Cir.1993)). Defaults generally are disfavored and are reserved for rare occasions. *Enron Oil Corp.,* 10 F.3d at 96. Accordingly, all doubts must be resolved in favor of the party seeking relief from the default in order to ensure that, to the extent possible, disputes are resolved on their merits. *Powerserve Int'l, Inc.,* 239 F.3d at 514.

Defendants have moved to vacate the default pursuant to Fed.R.Civ.P. 60. (Dkt. 15). Fed.R.Civ.P. 60, which provides for relief from a judgment or order, allows a court to set aside entry of a default judgment. In this case, the Clerk has entered a default, but there is no default judgment. (Dkt. 14). Where there has been a certificate of default, but no default judgment, the court decides the motion to vacate the entry of default pursuant to Fed.R.Civ.P. 55(c), which is more lenient than the standard to set aside a default judgment under Fed.R.Civ.P. 60(b). *Meehan v. Snow,* 652 F.2d 274, 276 (2d Cir. 1981). Despite the different standards, the same "good cause" factors are applied in Rule 55(c) and Rule 60(b) motions. *Enron Oil Corp.,* 10 F.3d at 96.

"Although Rule 55(c) envisions a formal motion for relief, the courts have shown considerable leniency in treating other procedural steps as equivalent to a motion, particularly when the conduct evidences a desire to correct the default." 10 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2692 (3d ed. 1998). For example, where a default has been entered, "opposition to a motion for a default judgment can be treated as a motion to set aside entry of a default despite the absence of a formal Rule 55(c) motion." *Meehan,* 652 F.2d at 276. *See also SEC v. Dumont Corp.,* 49 F.R.D. 342, 343 (S.D.N.Y.1969) (treating a motion to dismiss under Fed.R.Civ.P. 12 and

65 as a motion to set aside a default judgment under Fed.R.Civ.P. 55(c) and 60(b)). The Court therefore considers Defendants' current motion as a motion to set aside entry of default pursuant to Fed.R.Civ.P. 55(c).

## DISCUSSION

### I. The "Good Cause" Factors

■ When determining whether there is "good cause" to vacate entry of default under Fed.R.Civ.P. 55(c), a district court must consider three factors: (1) the willfulness of the default; (2) the existence of a meritorious defense to the defaulted claims; and (3) prejudice to the non-defaulting party should relief be granted. *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001). "[N]o single factor is dispositive." *FedEx TechConnect, Inc. v. OTI, Inc.*, No. 12 Civ. 1674, 2013 WL 5405699, at *4, 2013 U.S. Dist. LEXIS 139591, at *11 (S.D.N.Y. Sept. 23, 2013). *See also Wagstaff–El v. Carlton Press Co.*, 913 F.2d 56, 57 (2d Cir.1990) (district court did not abuse its discretion by vacating a default judgment despite a finding of willfulness, because the defaulting party had a meritorious defense and the plaintiff would not be prejudiced if the default was vacated). "When doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d at 96. "Good cause" should be construed generously. *Id.* "While courts are entitled to enforce compliance with the time limits of the Rules by various means, the extreme sanction of a default judgment must remain a weapon of last, rather than first, resort." *Meehan*, 652 F.2d at 277.

### A. Willfulness

■ Defendants have demonstrated that their failure to answer the complaint was not willful but rather was the result of excusable neglect. Mere negligence or carelessness is insufficient to support a finding of willfulness. *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir.1998). Willfulness requires egregious conduct that is not satisfactorily explained. *Id.* (citing *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 60–61 (2d Cir. 1996)). For example, default is willful when a defendant ignores a complaint without action and fails to offer an explanation for its failure to respond to a motion or pleading. *Marziliano v. Heckler*, 728 F.2d 151, 156 (2d Cir.1984); *McNulty*, 137 F.3d at 738–39.

■ The conclusion that Defendants did not act willfully should not be construed to suggest that the Court endorses Defendants' handling of this case up to this point. In addition to missing the deadline to answer, Defendants have demonstrated inattention to the necessary procedural details with this motion. As noted above, Defendants improperly filed their motion pursuant to Fed. R.Civ.P. 60(b) instead of Fed.R.Civ.P. 55(c). Also, the declaration of Assistant Attorney General Hillel Deutsch states that it was made pursuant to C.P.L.R. § 2106 instead of pursuant to 28 U.S.C. § 1746. (Dkt. 15–2). *See Martinez v. Carlee Corp.*, No. 12 Civ. 3112, 2013 WL 2412578, at *1 n. 2, 2013 U.S. Dist. LEXIS 79542, at *4 n. 2 (S.D.N.Y.2013) (C.P.L.R. § 2106 "does not apply in federal court."). Defendants also apparently failed to comply with L. R. Civ. P. 7(a)(8) by providing Plaintiffs with copies of the unpublished cases cited in their memorandum of law. (Dkt. 17 at 2).[1] Finally, it is odd that Defendants have submitted a declaration of Sayed Afify that states it was actually prepared in support of a motion for summary judgment and signed on May 15, 2013, six months before the Clerk even entered the default. (Dkt. 15–3).

Nonetheless, Defendants have satisfied the low threshold required to vacate the Clerk's Entry of Default. Defendants have demonstrated that the complaint was neither ignored nor completely neglected. Instead, Defendants claim, and Plaintiffs do not dispute, that settlement discussions were ongoing between the parties at the time of the default. Moreover, upon entry of the de-

---

1. The unpublished cases at issue, *Rahman v. Goord*, No. 04–CV–6368, 2007 WL 1299408, 2007 U.S. Dist. LEXIS 32680 (W.D.N.Y. May 3, 2007) and *Rahman v. Goord*, No. 04–CV–6368, 2011 WL 3422798, 2011 U.S. Dist. LEXIS 85875 (W.D.N.Y. Aug. 2, 2011), are being forwarded by the Court to Plaintiffs with this Decision and Order.

fault, Defendants immediately moved to vacate the default. (Dkt. 9, 10, 15).

This is not a case where Defendants did nothing in response to the filing of a complaint or failed to move to vacate the default for months. *See Dominguez v. United States*, 583 F.2d 615, 617–18 (2d Cir.1978) (dismissal affirmed where counsel delayed more than 10 months before moving to vacate the dismissal); *Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 336 (2d Cir.1986) ("Rule 55(c) sets forth no guidelines for determining within what period the defaulting party must move to set aside a default, but we think it plain that such a motion must be made within a reasonable time ...." (internal citation omitted)). While Defendants' failure to submit an answer was neglectful, it is not the type of willful conduct required to sustain entry of default.

### B. Meritorious Defense

 Defendants have shown that a meritorious defense exists. · " 'A defense is meritorious if it is good at law so as to give the factfinder some determination to make.' " *Am. Alliance Ins. Co.*, 92 F.3d at 61 (quoting *Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir.1988)). Defenses are subject to a "low threshold of adequacy for Rule 55 purposes." *Meehan*, 652 F.2d at 277.

Defendants have articulated specific defenses to Plaintiffs' action by describing several theories by which Plaintiffs' action should be dismissed and identifying various factual inaccuracies contained within the complaint. Defendants correctly point out that this Court has previously addressed the issue of separate Sunni and Shi'ite services in prisons and denied relief to Shi'ite inmates seeking injunctions for separate services, in the decisions of *Rahman v. Goord*, No. 04–CV–6368, 2007 WL 1299408, 2007 U.S. Dist. LEXIS 32680 (W.D.N.Y. May 3, 2007) and *Rahman v. Goord*, No. 04–cv–6368, 2011 WL 3422798, 2011 U.S. Dist. LEXIS 85875 (W.D.N.Y. Aug. 2, 2011). (Dkt. 15–1 at 2). Defendants assert that Plaintiffs' request for relief should be denied on the same grounds as those cited in these previous cases. *(Id.)*.

Additionally, Defendants contend that (1) the differences between Sunni and Shi'ite Muslims, practically, are minor, and (2) many of the allegations contained within the complaint are not accurate. (Dkt. 15–1 at 2, 3). In support of these contentions, Defendants submit the declaration of Sayed Afify, a defendant to this suit and the Imam employed by the Department of Corrections as the facility chaplain at Elmira Correctional Facility. (Dkt. 15–3). In his declaration, Mr. Afify claims that many of Plaintiffs' demands are unnecessary or impracticable based on the fact that the Muslim community is broken into many subgroups, and that their practices, prayers, and holidays are largely the same. (Dkt. 15–3 at ¶¶ 4–10). Mr. Afify also disputes Plaintiffs' allegations regarding exclusion from religious services, as well as denial of study materials, fundraisers, and an equal number of classes for Shi'ite prisoners. He references various supporting exhibits, including callout sheets, which purport to list Plaintiffs as attendees at Muslim religious services. (Dkt. 15–3 at ¶¶ 11–24). As noted above, it strikes the Court as odd that the declaration of Mr. Afify was signed six months before the default and prepared in connection with a summary judgment motion. Nonetheless, by the submission of the declaration of Mr. Afify, Assistant Attorney General Deutsch represents to the Court that he has obtained this sworn declaration from Mr. Afify on the date set forth in the declaration, and that he possesses the original signature in his file. *See* Western District of New York Administrative Procedures Guide § 2(g)(v).

Plaintiffs argue that Defendants do not possess a meritorious defense. They cite two cases in support of this assertion, *Orafan v. Rashid*, 249 Fed.Appx. 217 (2d Cir.2007) and *Pugh v. Goord*, 345 F.3d 121 (2d Cir.2003). Both are cases brought by Shi'ite inmates seeking separate religious services. In *Orafan*, the Second Circuit reversed a grant of summary judgment in favor of the Department of Corrections, finding issues of fact concerning the burden placed on plaintiffs' religious exercise and defendants' ability to accommodate plaintiffs' requests. 249 Fed. Appx. at 217–18. In *Pugh*, the Second Cir-

cuit vacated a court's decision to *sua sponte* dismiss plaintiffs' claims without notice after denying plaintiffs' request for a preliminary injunction. 345 F.3d at 122–23. In other words, neither *Orafan* nor *Pugh* made a final determination regarding the constitutional validity of plaintiffs' religious discrimination claims, nor does either case foreclose defendants' claimed "meritorious defense," Whether a defense is meritorious "is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil Corp.*, 10 F.3d at 98. *See also Davis*, 713 F.2d at 916 ("a defendant seeking to vacate a default judgment need not conclusively establish the validity of the (defenses) asserted...."). Therefore, *Orafan* and *Pugh* do not impact the analysis of whether Defendants possess a meritorious defense to this action.

### C. Prejudice to Plaintiffs

There is no indication that Plaintiffs will suffer prejudice as a result of Defendants' delay in answering the complaint. Plaintiffs argue that "every week that they are prevented from congregate prayer, or having a fundraiser, an equal number of religious classes, or any of the other rights provided to the numerous other DOCCS recognized religious groups is prejudicial to the plaintiffs and vacating the Order of Default would further that prejudice." (Dkt. 17 at 3).

While vacating the default judgment will result in some delay, "delay standing alone does not establish prejudice." *Enron Oil Corp.*, 10 F.3d at 98. Rather, it must be shown that delay will "result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis*, 713 F.2d at 916 (internal citation omitted). Plaintiffs fail to raise some other reason beyond delay that will cause them to suffer prejudice. As there is no evidence that Plaintiffs will be unduly prejudiced if Defendants' motion to vacate the default judgment is granted, the third factor weighs in favor of setting aside the Clerk's Entry of Default.

### CONCLUSION

For the foregoing reasons, Defendants' motion to vacate the Clerk's Entry of Default is granted. Although Defendants filed an answer on March 26, 2014 (Dkt. 21), they lacked the authority to do so at the time. Nonetheless, based upon the Court's decision set forth herein, the Court authorizes the filing of the answer *nunc pro tunc* and the answer filed on March 26, 2014, is accepted. Accordingly, the case will be referred to a United States Magistrate Judge for all pretrial matters excluding dispositive motions pursuant to 28 U.S.C. § 636(b).

SO ORDERED.