**STANDARD OFFICE SYSTEMS OF FORT SMITH, INC., Plaintiff,**

v.

**RICOH CORPORATION, INC. and Modern Business Systems, Inc., Defendants.**

**No. Civ. 90–2040.**

United States District Court,
W.D. Arkansas,
Fayetteville Division.

June 25, 1990.

Gregory G. Smith, Pryor, Barry, Smith, Karber and Alford, Fort Smith, Ark., for plaintiff.

John J. O'Connell, Webster & Sheffiel, New York City, Robert L. Jones, Jr., Jones, Gilbreat, Jackson & Moll, Fort Smith, Ark., for Ricoh.

O.H. Storey, III, Hoover, Jacobs & Storey, Little Rock, Ark., Howard D. Scher, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for Modern Business Systems.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

Plaintiff, Standard Office Systems of Fort Smith, Inc. (hereinafter SOS), initiated this action in an Arkansas state court against defendants, Ricoh Corporation (Ricoh), and Modern Business Systems, Inc. (MBS), alleging that SOS marketed Ricoh copiers and products until Ricoh tortiously ceased doing business with SOS and began dealing instead with MBS. To make a long story short, plaintiff contends that Ricoh and MBS conspired to engage in unfair competition with SOS to cause tortious interference with SOS' existing business rela-

tions, tortiously interfered with SOS' reasonable business expectations, and committed tortious defamation of SOS' business reputation.

The action was removed by both defendants to this court. The pleadings reflect that SOS is a corporation organized under the laws of the State of Arkansas with its principal place of business in Arkansas. At the time of the alleged tortious acts, MBS was a Missouri corporation with its principal place of business in Missouri, and subsequently has been merged into Alco Standard Corporation, an Ohio corporation with its principal place of business in Pennsylvania. Ricoh is a Delaware Corporation with its principal place of business located in New Jersey.

Plaintiff's allegations involve an Office Products Retail Dealer Sales Agreement entered by plaintiff and Ricoh. Paragraph 18.1 contains a forum selection clause. That clause states:

Dealer and Ricoh agree that this Agreement, and all documents issued in connection therewith, shall be governed by and interpreted in accordance with the laws of the State of New York. Dealer and Ricoh agree that any appropriate state or federal district court located in the Borough of Manhattan, New York City, New York, shall have exclusive jurisdiction over any case or controversy arising under or in connection with this Agreement and any judgement of such court shall be enforceable in any court having jurisdiction over the party against whom such judgement is rendered. Service of process on either party may be made by certified mail, return receipt requested, at their respective addresses as provided herein.

Relying upon this clause, Ricoh moved to transfer the venue of this action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). In support of this motion, James Ivy, Senior Vice President of Ricoh executed an affidavit which states, *inter alia:*

Ricoh does not have any contacts with the State of Arkansas. All potential witnesses are located ... in, among other

places, Texas, Illinois, Georgia and New Jersey.

\*     \*     \*     \*     \*     \*

[T]he only complete set of Ricoh documents ... are (sic) maintained at Ricoh's corporate headquarters in West Caldwell, New Jersey.

On March 30, 1990, MBS filed an answer raising as affirmative defenses, the expiration of the statute of limitations, failure to state a claim, impropriety of punitive damages, business competition, necessity and privilege. MBS did not object to this court's jurisdiction or to the venue. Shirley Gassen, Vice President and Controller of MBS, submitted an affidavit in support of Ricoh's motion to transfer venue. This affidavit states, in part:

MBS has no significant contacts with Arkansas. It has facilities in Arkansas but is headquartered in Missouri. Any relevant MBS documents or any potential MBS witnesses are located outside Arkansas.

MBS is an unincorporated division of Alco ..., a corporation ... existing under the laws of Ohio....

MBS wishes to litigate this action in the Southern District of New York. A trial in New York would be more convenient for MBS than trial in Fort Smith, Arkansas.... MBS' primary outside counsel ... are located in Philadelphia, Pennsylvania.

MBS and Ricoh both assert that they are amenable to jurisdiction in the Southern District of New York. They rely upon 28 U.S.C. § 1404(a) as the statutory basis of their motion. That section provides:

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

As to "where it might have been brought", defendants rely upon § 1391(c) which states:

(c) For purposes of venue ... a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced....

■ Defendants have not raised a lack of *in personam* jurisdiction as a barrier to suit in Arkansas. Ricoh raised as defenses in its answer only that the complaint fails to state a cause of action and that venue is improper because of the forum selection clause. Thus, Ricoh waived any contention that this court lacks jurisdiction *in personam* of it. *See* Rule 12(h)(1). Therefore, Ricoh is subject to the jurisdiction of this court. The same holds true of MBS.

The Eighth Circuit Court of Appeals has considered the effect of a forum selection clause on a motion to transfer venue under § 1404(a). In *Farmland Indus. v. Frazier-Parrott Commodities*, 806 F.2d 848 (8th Cir.1986), after concluding that the refusal by a district court to apply a forum selection clause is not appealable the court indicated that a public policy of the forum state forbidding or approving forum selection clauses should be considered and given at least significant weight. The court considered an earlier Supreme Court opinion, *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) which suggested that the question of venue is a matter of federal procedure and that federal law generally favors the enforcement of forum selection clauses, absent a showing that to do so would be unreasonable or unjust, or that the clause was the product of fraud or overreaching. However, the court of appeals noted that *The Bremen* was a case arising under the admiralty laws of the United States while *Farmland Industries* was a diversity action. Therefore, the court of appeals found *The Bremen* not to be dispositive.

In 1988, the Supreme Court again faced the issue. In *Stewart Organ. v. Ricoh Corp*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) the court held that federal law, specifically § 1404(a), governs the decision whether to effectuate a forum selection clause. In reaching this result, the court held that although *The Bremen* was "instructive," the lower court had erred in analyzing the issue solely under the standards articulated therein.

The court, in *Stewart Organ.*, held that the presence of a forum selection clause, although figuring centrally in the calculus, should receive neither dispositive consideration nor no consideration, but rather the consideration for which Congress provided in § 1404(a). Said the court:

> The district court also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.' It is conceivable in a particular case, for example, that because of these factors a district court acting under § 1404(a) would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause....

*Stewart Organ.*, 487 U.S. at 30–31, 108 S.Ct. at 2244.

■ In weighing the various factors the court notes that plaintiff selected the forum of the State of Arkansas. The defendants prefer the Southern District of New York. Although these factors arguably "cancel one another out," historically the plaintiff's choice of forum has been accorded more weight than a defendant's preference. *See* Wright, Miller & Cooper, *Federal Practice and Procedure*, Vol. 15, § 3848, pp. 249–51.

■ The "residence" of the parties is a valid consideration, although certainly not a dispositive one. In this regard the court notes that where a corporation is deemed to reside, as that term is used in § 1391(a), includes any judicial district in which the corporation is subject to personal jurisdiction. The defendants state that they are subject to personal jurisdiction of the courts in the State of New York. It would also appear, no objection having been made, that the defendants were at the time this suit was initiated also subject to personal jurisdiction of the courts in the State of Arkansas. Therefore, "residence" certainly does not weigh in either party's favor.

■ The location of counsel is a valid factor to consider, however, it is entitled to little weight. *See* Wright, Miller & Cooper,

*supra*, § 3850 at pp. 261–62. In any event, although defendants' counsel are located in or "near" New York, plaintiff's counsel is located in Arkansas. Thus, this factor, entitled to little weight to begin with, is not availing to either party.

■ The citizenship of the parties should also be considered. The court notes that plaintiff is a citizen of the State of Arkansas. MBS, when it was a separate entity, was a citizen of Missouri. It has now been "merged" into Alco which is a citizen of Ohio and of Pennsylvania. Ricoh is a citizen of Delaware and of New Jersey. Citizenship then, to the extent it is a valid factor, weighs more in favor of the plaintiff than either defendant, as neither defendant is a citizen of New York, although the court takes judicial notice that New York is contiguous with New Jersey as is Pennsylvania. For that matter, however, Arkansas is contiguous to Missouri. In any event, the citizenship of the parties does not weigh in favor of transfer.

A more important factor is the convenience of witnesses. *See* Wright, Miller & Cooper, *supra*, § 3851, at pp. 264–65. In this regard, Ricoh urges that all potential witnesses are located in Texas, Illinois, Georgia, and New Jersey. Although it is obvious that not "all potential witnesses" are located in those states because many of plaintiff's witnesses are located in Arkansas, the court notes that Arkansas is closer to Texas, Illinois, and Georgia than is New York. Although New Jersey is closer to New York than is Arkansas, no one has even contended that any witnesses are located in New York, and the court notes that if it is inconvenient for witnesses located in New Jersey to come to Arkansas, it would appear to be more inconvenient to require witnesses located in Texas to travel to New York where there are no witnesses at all. Regarding MBS' witnesses, the court notes that MBS is "headquartered" in Missouri. Further, although plaintiff's lawsuit "involves" the agreement which contains the forum-selection clause, plaintiff's lawsuit sounds in tort. The existing "business relations" with which the defendants are accused of interfering are located

either in Arkansas or close to it, as would be the case with plaintiff's legitimate business expectations, and plaintiff's business reputation. Witnesses supporting plaintiff's claim and the damages proximately caused by defendants' alleged conduct, therefore, have a much closer connection to Arkansas than any other state mentioned, and certainly than to New York.

> Additionally, it is generally held that: The rule is that these applications are not determined solely upon the outcome of a contest between the parties as to which of them can present a longer list of possible witnesses located in the respective districts in which each party would like to try the case. The party seeking the transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover. The emphasis must be on this showing rather than on numbers. One key witness may outweigh a great number of less important witnesses. If a party has merely made a general allegation that witnesses will be necessary, without identifying them and indicating what their testimony will be the application for transfer will be denied.

Wright, Miller & Cooper, *supra*, § 3851 at pp. 270–71.

Thus, reference to the location of witnesses weighs more heavily in plaintiff's favor than in defendants'.

The location of documents has been urged as an important factor in this case. Ricoh says that its documents are in New Jersey. MBS says only that its documents are "located outside Arkansas," probably in Missouri where it is "headquartered". No documents are located in New York. Although New Jersey is "close" to New York, Missouri is "just as close" to Arkansas. Further, defendants have not suggested that the relevant records are so voluminous as to burden the defendants in their efforts to bring them here. Again, according to Messrs. Wright, Miller and Cooper:

> As is the case with witnesses, general allegations that transfer is needed because of books and records are not enough. The moving papers must show the location and the importance of the documents in question.

*Id.*, § 3853, at pp. 278–79.

█ The prompt resolution of disputes is a criterion to be considered under the penumbra of concepts included within "the interests of justice." In this regard the court would point out that this case is set for trial in this court the week of August 27, 1990. The court has "no earthly idea" when the case could be tried in the Southern District of New York, but the court feels comfortable in concluding that the case will be tried sooner here than if it is transferred to the Southern District of New York.

Another factor that has been urged in support of a transfer "in the interest of justice" is that New York law would apply by virtue of the forum selection clause and New York judges are more familiar with New York law than is this court. The court does not dispute that proposition in the least.

However, the clause merely provides that:

> [T]his Agreement, and all documents issued in connection therewith, shall be governed by and interpreted in accordance with the laws of the State of New York. . . .

It should be noted that plaintiff does not sue solely on the basis of rights created by the agreement; plaintiff sues, at least apparently, on the basis of tort law which governs the conduct of all persons conducting business or taking certain actions in Arkansas or affecting persons located in Arkansas, or causing tortious injury in Arkansas. Hence, the argument that New York law should govern the interpretation of the agreement says little or nothing about plaintiff's allegations of tortious conduct on the part of the defendants. Even if New York law is held to control the interpretation of the contract, the primary focus of plaintiff's claims is the *conduct* of the defendants—not the *words* of the parties.

■ Further, for reasons to be set forth below, it is far from clear that New York law applies to any part of plaintiff's lawsuit, notwithstanding the forum selection clause. In fact, it appears that there is absolutely no connection between the contract and the State of New York other than the clause itself. To apply New York law to determine rights arising under a contract or a transaction which lacks a *substantial connection* with the State of New York would violate the due process clause and the rule of *Home Insur. Co. v. Dick*, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926 (1930).

■ Thus, unless the clause itself provides "substantial connection" with the State of New York, New York law *cannot* be applied. However, even if the clause provides the requisite "substantial connection", it is obvious that Arkansas' choice of law rules will govern the law to be applied. The court need not definitively resolve this choice of law issue at this time but notes that the general rule appears to be that, even when a contract contains a choice of law provision: "... it is properly insisted that the law chosen must be that of a state which is reasonably related to the contract." Leflar, McDougal & Felix, *American Conflicts Law*, Fourth Edition, § 147 pp. 418–19; *see also Medtronic, Inc. v. Gibbons*, 684 F.2d 565 (8th Cir.1981 (Minnesota law); *Joy v. Heidrick & Struggles, Inc.*, 403 N.Y.S.2d 613, 93 Misc.2d 818 (1977) (chosen state had no "substantial relation to a reasonable basis for "parties' choice"); *General Elec. Co. v. Keyser*, 166 W.Va. 456, 275 S.E.2d 289 (1981) (choice of New York law rejected because of insubstantial connection). Arkansas' choice of law rules must be applied even if the case were to be transferred. *See Ferens v. John Deere Co.*, —— U.S. ——, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990); *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

The Arkansas courts have frequently refused to apply the law of a state selected by the parties in a contract. *See Tri–State Equipment Co. v. Tedder*, 272 Ark. 408, 614 S.W.2d 938 (1981) (Arkansas law applied to void a contract notwithstanding that the parties had chosen Tennessee law under which the contract was valid). Although the *Tri–State* decision involved usury and the instant case does not appear to raise issues involving a strong state policy as did *Tri–State*, the fact remains that nothing connected with this case is related to the State of New York. Therefore, it is far from clear that New York law would be applied and, thus, there is little support for defendants' proposition that the case should be transferred to New York because New York law applies. Presumably, Arkansas judges are more familiar with Arkansas' choice of law rules and Arkansas tort law than the federal bench in New York.

As indicated earlier, the only factor which weighs in favor of a transfer is the presence of the forum selection clause itself. The speedy resolution of this case and the interests of justice militate in favor of this court's retention of the case. It is probably more convenient and at least as convenient for the defendants to try the case here than for plaintiff to try the case in New York. The general rule in regard to transfers is that:

It has been pointed out earlier that a transfer will be refused if its effect would merely be to shift inconvenience from one party to the other....

A defendant moving for transfer must show that the original forum is inconvenient for it and that plaintiff would not be substantially inconvenienced by a transfer.

Wright, Miller and Cooper, *supra*, § 3849 at p. 259.

As *Stewart Organ.* makes clear, the forum selection clause is but one factor in the § 1404(a) determination. Here it is the *only* significant factor supporting a transfer. That fact, in conjunction with the fact that New York has no interest in or connection with the agreement or the lawsuit, indicates to the court that defendants' motion to transfer should be denied, despite the forum selection clause.

An order effectuating the foregoing will be concurrently entered.